**Hilarion SANTOS, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

Nos. 05–CT–729, 05–CT–730.

District of Columbia Court of Appeals.

Submitted Oct. 24, 2007.
Decided Nov. 29, 2007.

Robert Athanas was on the brief, for appellant.

Linda Singer, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Rosalyn Calbert Groce, Deputy Attorney General, and Janice Y. Sheppard, Assistant Attorney General, were on the brief, for appellee.

Before GLICKMAN, Associate Judge, NEBEKER and STEADMAN, Senior Judges.

GLICKMAN, Associate Judge:

In these consolidated cases, Hilarion Santos was convicted in a bench trial of three traffic offenses: driving under the influence of intoxicating liquor (DUI) in violation of D.C.Code § 50–2201.05(b)(1) (2001 & Supp.2007); operating a vehicle while impaired by the consumption of in-toxicating liquor (OWI) in violation of D.C.Code § 50–2201.05(b)(2) (2001 & Supp.2007); [1] and operating a motor vehicle in the District of Columbia without a permit in violation of D.C.Code § 50–1401.01(d) (2001 & Supp.2007). Santos does not challenge the validity of his DUI and OWI convictions, both of which resulted from his arrest for drunk driving on November 21, 2004. He contends only that his conviction on one of those two offenses should be vacated to avoid "duplicative punishments" because the "two statutory provisions cover the same conduct." [2] Agreeing with this contention, the District asks us to direct the trial court to vacate the OWI conviction on remand. We shall accede to the parties' wishes. While this court has held that OWI is not a lesser-included offense of DUI, [3] the District, in essence, concedes that the two offenses are so closely related that they should be considered alternates, precluding punishment for both. [4]

Santos also contends that there was insufficient evidence of his *mens rea* to support his conviction for operating a motor vehicle without a permit. More specifically, Santos argues that the District did not prove that he knew prior to his arrest that his driving privileges had been suspended, and hence failed to prove that he violated the statute with a criminal intent. The trial court ruled that operating without a permit is a strict liability offense for which proof of *mens rea* is not required. We agree that knowledge and

---

1. Subsection (b) of the statute was revised subsequent to appellant's arrest in respects not material to this opinion.

2. *Anand v. District of Columbia,* 801 A.2d 951, 956 (D.C.2002).

3. *See Scott v. District of Columbia,* 539 A.2d 1085, 1086 (D.C.1988) (holding that OWI is not a lesser-included offense of DUI, but rather is a separate and distinct offense); *but see*

*Anand,* 801 A.2d at 957 n. 8 (stating that "it would seem ... that OWI is a lesser-included offense of DUI," and pointing out that our holding to the contrary in *Scott* rested on the government's decision not to contest the point).

4. *See Byrd v. United States,* 598 A.2d 386, 391–93 (D.C.1991) (en banc).

intent are not elements of the offense. Consequently, we affirm Santos's conviction.

D.C.Code § 50–1401.01(d) states that "no individual shall operate a motor vehicle in the District, except as provided in § 50–1401.02, without first having obtained" a District of Columbia operator's permit, learner's permit, or provisional permit. The statute authorizes a maximum fine of $300 or up to 90 days' imprisonment for each violation. A temporary exemption from the D.C. permit requirement is provided in D.C.Code § 50–1401.02 (2001 & Supp.2007) for non-residents who have "complied with" the applicable driver's licensing laws of another jurisdiction.[5]

At the time of his arrest in this case, Santos, a resident of Virginia, had not obtained a driver's permit from the District of Columbia. This was established at trial by records of the District of Columbia Department of Motor Vehicles. Santos had obtained a driver's license from Virginia, which he produced to the arresting officer. His possession of this license did not prove that Santos had met the conditions of the non-resident exemption, however.[6] At trial, the government introduced a certified copy of Santos's driver history record issued by the Virginia Department of Motor Vehicles. The official record revealed that Santos's Virginia driver's license was suspended on November 10, 2004, following his conviction for a traffic violation in the General District Court of Fairfax County on October 20, 2004. The Virginia record also disclosed that Santos had a history of earlier traffic convictions and license suspensions. Santos did not dispute these facts, nor did he contest the legality or the effective date of his November 10 suspension. The trial court consequently found that Santos had not "complied with" Virginia law within the meaning of D.C.Code § 50–1401.02(a) when he drove his car on November 21, 2004, eleven days after his Virginia driver's license had been suspended. The evidence at trial thus seemingly proved that Santos had operated a motor vehicle in the District of Columbia in violation of D.C.Code § 50–1401.01(d).[7]

However, as Santos argued and the trial court acknowledged, the evidence did not show that he intentionally violated the D.C. law. On the contrary, although Santos did not testify, there was evidence that

---

5. D.C.Code § 50–1401.02, entitled "Exemptions," provides as follows:

(a) The owner or operator of any motor vehicle who is not a legal resident of the District of Columbia, *and who has complied with* the laws of any state, territory, or possession of the United States, or of a foreign country or political subdivision thereof, shall, subject to the provisions of this section, be exempt for a continuous 30 day period immediately following the entrance of such owner or operator into the District of Columbia from compliance with §§ 50–1401.01 and 50–1501.02. The 30–day exemption period shall not apply to commercial motor vehicles required to obtain a trip permit, as provided by § 50–1507.03, or charter buses identified in § 50–1501.02(j).

(Emphasis added.)

6. *Cf. English v. United States*, 806 A.2d 1236, 1238 (D.C.2002) (explaining that a Maryland resident driving a motorcycle in the District of Columbia had not complied with the laws of Maryland, as required by § 50–1401.02, because he had not obtained a special Class M license required by Maryland law to operate a motorcycle).

7. Santos was not charged under D.C.Code § 50–1403.01(e) (2001 & Supp.2007), which provides that "[a]ny individual found guilty of operating a motor vehicle in the District during the period for which the individual's license is revoked or suspended, or for which his right to operate is suspended or revoked, shall, for each such offense, be fined not to exceed $5,000 or imprisoned for more than 1 year, or both."

he might not have known at the time of his drunk driving arrest that his Virginia driver's license had been suspended. Santos's Virginia driver history record states that he was "not present" at the Fairfax County General District Court on October 20, 2004, when he was convicted of the traffic offense that resulted in the suspension of his license. The somewhat cryptic driver history record further states that notification of the suspension was mailed to Santos but was "unclaimed," indicating that he did not receive it. Finally, the record states that an unidentified "DMV representative" notified Santos of his license suspension on December 6, 2004—implying that Santos did not hear of the suspension until *after* his arrest in the District.[8]

■ Santos does not assert any constitutional bar to a statute imposing strict criminal liability without regard to scienter for driving without a license, nor could we conclude that such a bar exists.[9] In general, the "definition of the elements of a criminal offense is entrusted to the legislature."[10] Thus, whether D.C.Code § 50–1401.01(d) requires proof of guilty knowledge, as Santos contends, or, instead, creates a strict liability offense, as the government argues and the trial court ruled, is a question of statutory interpretation. We review the trial court's resolution of that question *de novo.*[11]

■ On its face, D.C.Code § 50–1401.01(d) makes it a misdemeanor to operate a motor vehicle without a permit irrespective of scienter. *Mens rea* is not an element of the offense as statutorily defined; nor does the motorist's state of mind figure into the statutory exemption for non-residents who have "complied with" the licensing laws of another jurisdiction.[12]

■ Ordinarily, where the language of a statute "is plain, and ... the law is within the constitutional authority of the law-making body which passed it, the sole function of the courts is to enforce it according to its terms."[13] But where, as here, a criminal statute is silent on the question of *mens rea*, it is subject to a "common law presumption in favor of requiring a culpable state of mind...."[14] This presumption is not conclusive, however. Often, "where the legislature is acting

8. With respect to Santos's earlier traffic offenses and suspensions in Virginia, the record similarly indicated that Santos often had not come to court and might not have received the notices suspending his driving privileges.

9. *See McNeely v. United States,* 874 A.2d 371, 385 (D.C.2005) ("A great weight of case law rejects the notion that there is a constitutional bar to strict liability crimes or a prohibition against imprisonment for conviction on a strict liability basis."). "Strict liability criminal offenses—including felonies—are not unprecedented in the District of Columbia: the Council has enacted several such statutes in the past." *Id.* at 385–86 (citing examples).

10. *Id.* at 380 (quoting *Liparota v. United States,* 471 U.S. 419, 424, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985)).

11. *McNeely,* 874 A.2d at 387.

12. D.C.Code § 50–1401.02(a). It should be noted that the non-resident exemption is a defense calling for "affirmative proof by the motorist" before it is properly in issue. *Bush v. District of Columbia,* 78 A.2d 234, 235 (D.C.1951).

13. *McNeely,* 874 A.2d at 387 (internal quotation marks and citations omitted).

14. *Id.* at 388 (citing *Staples v. United States,* 511 U.S. at 606, 625, 114 S.Ct. 1793 (1994)). "The presumption is based on the common understanding of *malum in se* offenses, which traditionally are 'generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand.'" *McNeely,* 874 A.2d at 388 (quoting *Morissette v. United States,* 342 U.S. 246, 251, 72 S.Ct. 240, 96 L.Ed. 288 (1952)).

in its capacity to regulate public welfare, silence can be construed as a legislative choice to dispense with the *mens rea* requirement."[15]

As we discussed in *McNeely*, the Supreme Court has identified four considerations, in addition to the text of the statute itself, that may be helpful in determining whether the legislature intended to create a strict liability offense: "(1) the contextual rules of the common law; (2) whether the crime can be characterized as a 'public welfare offense' created by the legislature; (3) the extent to which a strict liability reading of the statute would seemingly encompass entirely innocent conduct; and (4) the harshness of the penalty."[16] In the present case, we think these considerations indicate that the legislature intended strict liability.

Although criminal liability at common law generally required proof of scienter, that requirement frequently has been relaxed or omitted for so-called "public welfare offenses" created by the legislature to regulate potentially dangerous activities, especially where the purpose of the prohibition "would be obstructed by a requirement of proof of culpable intent."[17] Operating a motor vehicle without a permit is such an offense. It is not a crime derived from common law, but rather is part of a modern regulatory framework that places the onus on motorists to obtain and maintain permits so as to protect the public from unqualified drivers. This court long has recognized that a "moving motor vehicle on a public street . . . is a potential danger," which "Congress intended . . . should be [driven] only by one who has first qualified for and received an operator's permit."[18] But requiring the government to muster evidence proving the non-compliant motorist's culpable mental state beyond a reasonable doubt would impair the effectiveness of the criminal sanction for violating the permit requirement.

■ Furthermore, we perceive no serious risk that strict liability for driving without a permit will encompass "entirely innocent conduct." Driver's licensing schemes are ubiquitous and familiar to all motorists, and compliance with their requirements is not onerous.[19] Disregard for the obligation to have a valid permit to drive is not entirely innocent conduct, therefore, even if it reflects carelessness rather than deliberate flouting of the law. In addition, a driver's license cannot be suspended or revoked without due process, including both fair notice of a traffic violation charge and the potential penalties, and the right to a hearing.[20] Admittedly, no system of procedural protections is perfect. Nonetheless, we think it extremely unlikely that any motorist *justifiably* will be unaware of the lawful forfeiture of his or her driving privileges.[21]

---

15. *McNeely*, 874 A.2d at 388 (citations omitted).

16. *Id.* at 389 (citing *Staples*, 511 U.S. at 605–18, 114 S.Ct. 1793).

17. *Id.* at 389; *see also id.* at 390; *Staples*, 511 U.S. at 607, 114 S.Ct. 1793.

18. *Richardson v. District of Columbia*, 134 A.2d 492, 493 (D.C.1957).

19. *Cf. McNeely*, 874 A.2d at 390.

20. *See Bell v. Burson*, 402 U.S. 535, 539, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

21. Santos, for example, has not shown that *his* behavior was blameless. He furnished no excuse for not attending the Virginia traffic court hearing that resulted in the suspension of his driver's license. So far as appears, Santos was at least on notice that his license was in jeopardy, and his purported ignorance of the suspension of his driving privileges bespeaks only willful blindness on his part.

Lastly, a violation of D.C.Code § 50–1401.01(d) is only a misdemeanor, punishable by at most a $300 fine or a 90–day jail term. As the Supreme Court explained in *Staples,* whereas "a severe penalty [would] suggest that [the legislature] did not intend to eliminate a *mens rea* requirement,"[22] the lightness of the potential penalties supports the inference that strict liability was intended.[23]

In view of the foregoing considerations and the plain language of the statute, we hold that operating a motor vehicle without a permit in violation of D.C.Code § 50–1401.01(d) is a strict liability offense that does not require scienter. To convict Santos of that offense, therefore, the District did not have to prove that he knew his Virginia driver's license had been suspended.

Accordingly, we affirm Santos's convictions, except that we remand the case with directions to vacate his duplicative conviction for OWI.

*So ordered.*

---

**22.** *Staples,* 511 U.S. at 618, 114 S.Ct. 1793.

**23.** *Id.* at 616, 114 S.Ct. 1793. "Certainly," the Supreme Court added, "the cases that first defined the concept of the [scienterless] public welfare offense almost uniformly involved statutes that provided for only light penalties such as fines or short jail sentences, not imprisonment in the state penitentiary.... [T]he small penalties attached to such offenses logically complemented the absence of a *mens rea* requirement...." *Id.*