2026 IL App (1st) 231564-U

SECOND DIVISION
May 12, 2026

No. 1-23-1564

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 CR 10778-01 |
| | ) | |
| MARCUS THOMPSON, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Attempted first-degree murder conviction reversed and remanded for new trial where jury was improperly instructed on *mens rea* element of offense.

¶ 2    Defendant Marcus Thompson was convicted of the attempted first-degree murder of Tyana Partee. He argues on appeal that the Illinois Pattern Jury Instructions (IPI) given here incorrectly stated the *mens rea* element of the offense. While this appeal was pending, *People v. Guy*, 2025 IL 129967, held that the *mens rea* element of attempted murder is not "the intent to kill," as the IPI instructions state, but rather "the intent to kill without lawful justification." Thus, a defendant does not commit an attempted murder if he sincerely believes he is acting in lawful defense of self or another, even if that belief is objectively unreasonable.

¶ 3	After briefing in light of *Guy*, the State concedes that defendant's jury was not properly instructed. And the instructional error was consequential here, as defendant's theory was that he shot Partee in lawful defense of his niece, Heavyn Lee, after Partee got the better of Lee in a fight. We thus reverse and remand for a new trial. Given this disposition, we need not reach defendant's remaining claims of error.

¶ 4	BACKGROUND

¶ 5	A brief overview of the shooting and the precipitating events, culled from Partee's trial testimony and video footage from a surveillance camera, will suffice for our purposes.

¶ 6	In September 2020, Partee and Lee were teenage girls—16 and 15 years old, respectively. Lee had a previous run-in, of some sort, with Partee's sister. So when the two girls saw each other in a hair salon, they "locked eyes" and started to argue. They both wanted to fight, but Lee wanted to get her hair done first. Partee obliged and stepped outside for a smoke while she waited. Meanwhile, Lee made a phone call.

¶ 7	Defendant arrived at the salon soon after Partee went back inside. Partee surmised at the time, not quite correctly, that defendant was Lee's father. In any event, defendant shouted something to Partee to the effect of, "mother***ers think shit a game." Partee responded that she did not "think shit a game," but perhaps "your daughter" does. Partee stepped out again and went to tell her father, who worked across the street, that she had words with a "grown man."

¶ 8	In due course, Partee returned to the salon and waited by the door while Lee's styling wrapped up. And soon enough, everyone was outside, where Partee and Lee resumed their verbal argument. According to Partee, defendant interjected that "he got something for [her] ass."

¶ 9      Partee and Lee squared off to fight and circled around. Defendant stepped between them, as if "trying to defend" Lee (as Partee put it), and pushed Lee toward his car. But the girls were intent on fighting and managed to elude defendant. Fists started flying, until a bystander pulled Partee off of Lee and broke up the fight.

¶ 10      A moment later, defendant walked up to Partee and shot her once in the stomach, though Partee was too "enraged," at first, to realize that she had been shot. Partee testified that she then heard the gun "click" again, as defendant pointed it at her a second time, but it did not fire. On cross-examination, Partee acknowledged that she did not mention the (alleged) attempted second shot in her initial interviews with the police. She did, however, include this detail in her recorded statement, given at the station about three weeks after the shooting.

¶ 11      The video footage paints a more detailed picture of the fisticuffs. In the moments leading up to the fight, defendant can be seen separating Partee and Lee as everyone walks down the street. As Partee starts to circle Lee and block her path, the girls raise their fists. Defendant takes Lee by the shoulder, leading her down the street and toward his Jeep, where bystanders begin to gather. Defendant heads toward the driver's side door, and Lee appears to be opening the passenger's side door, or at least trying to, when Partee raises her fists and assumes a boxing stance. And so the fight begins, as the girls start throwing punches and tussling.

¶ 12      Partee quickly gains the upper hand. She throws Lee down onto the sidewalk, grabs her by the hair, and punches her in the head five times, while Lee tries to shield her face. Partee then pulls Lee up to her knees and, still grabbing her by her hair, stomps on her face and throws her, headfirst, toward the brick wall of a building. Lee manages to turn enough to hit her hip instead

of her head. At this point, defendant can be seen reaching into the driver's side of the Jeep.

¶ 13 With Lee against the brick wall, face down in a fetal position, Partee punches her five more times before Lee manages to grab Partee's legs. They wrestle briefly, and Partee again winds up on top, punching Lee two more times. At this point, defendant walks toward the girls, holding a gun in his left hand, while the bystander arrives and breaks up the fight.

¶ 14 Defendant completes his approach, raises his gun, and, from about six feet away, appears to fire a single shot at Partee. As the State repeatedly emphasized to the jury, that shot was fired "seven seconds" after the fight was broken up. Partee falls to the ground, and defendant starts to walk back toward the Jeep. Along the way, he points the gun at Partee a second time, but no shot is fired. The video is not fine-grained enough to reveal whether defendant actually pulled the trigger. But for what it's worth, defendant shows no discernible reaction suggesting that the gun jammed when he wanted it to fire, and he makes no effort to fix any problem with it. Instead, defendant and Lee walk to the Jeep and drive away.

¶ 15 Defendant's principal theory was that he shot Partee in lawful defense of Lee. He thus requested jury instructions on defense of another, arguing to the court that he "showed up," in counsel's phrase, "in response to" his niece "getting the crap beat out of her." The trial court agreed that there was sufficient evidence to instruct the jury on the affirmative defense of "justifiable use of force." See IPI, Criminal, Nos. 24-25.06, 24-25.06A.

¶ 16 In addition to the justification instructions, the jury received pattern instructions on the charged offenses of attempted first-degree murder and aggravated battery with a firearm. Defense counsel did not object to the attempted-murder instructions.

¶ 17    The parties largely trained their arguments on the dispositive question of justification. To this end, the defense argued that Partee handed Lee a severe beating and emphasized the danger of being thrown headfirst toward a brick wall. The State argued that defendant brought a gun to a fistfight between two teenage girls and shot one of them after the fight was over. And putting the question of justification or reasonableness aside, the State argued, the shooting was never meant to be a defensive act at all. Rather, it was an act of "retaliation."

¶ 18    The jury found defendant guilty of attempted first-degree murder and aggravated battery with a firearm. The trial court sentenced defendant to 35 years in prison for attempted murder (including a 25-year firearm enhancement) and merged the remaining convictions.

¶ 19                                          ANALYSIS

¶ 20    Defendant argues that the IPI instructions for attempted first-degree murder, as given here, incorrectly state the *mens rea* element of the offense. As the State concedes, our supreme court's decision in *Guy*, 2025 IL 129967, definitively answers the question in defendant's favor.

¶ 21    *Guy* holds that in an attempted first-degree murder case, the State must prove an "intent to kill without lawful justification," not merely an "intent to kill." *Id.* ¶ 1. Attempted first-degree murder is a specific-intent crime and thus requires an intent to commit a specific offense, namely, first-degree murder. *Id.* ¶ 35. First-degree murder is a killing "without lawful justification." *Id.* ¶ 46. Thus, "the intent required for attempted first degree murder is the intent to kill without lawful justification." *Id.*

¶ 22    And the key point is that "[t]his intent is judged from a subjective standpoint." *Id.* It follows that "[a] defendant who subjectively believes in the need for self-defense" "would not

have the specific intent to commit first degree murder" and thus "cannot be convicted of attempted first degree murder." *Id.* ¶ 47. In other words, a defendant who acts in *imperfect* self-defense is not guilty of attempted first-degree murder—though he may be guilty of aggravated battery if his subjective belief was unreasonable and he thus failed to act in *justified* self-defense (or defense of another). See *id.* ¶¶ 72-75.

¶ 23    *Guy*'s construction of the *mens rea* element of attempted first-degree murder has a weighty implication: the IPI instructions for this offense, which specify a *mens rea* element of "the intent to kill an individual," are wrong on their face, for they misstate an essential element of the crime. IPI Criminal Nos. 6.05X, 6.07X (4th ed. 2000).

¶ 24    Note that instructing the jury on an affirmative defense of justification does not cure the error in the pattern instructions. When the jury is instructed on justification, the phrase "without lawful justification" describes the defendant's *use of force*, not the defendant's *intent* or belief. See *Guy*, 2025 IL 129967, ¶¶ 12, 47. But to secure a conviction for attempted murder, it is not enough for the State to prove that the defendant's use of force was objectively unjustified; the State must prove the defendant did not even *believe* his use of force was justified. *Id.* ¶¶ 47, 53. This can only be accomplished by including the phrase "without lawful justification" within the scope of the *mens rea* element of (specific) intent. The IPI instructions fail to do so and thus fail to properly convey the required mental state to the jury. They were wrong in *Guy* (see *id.* ¶ 12), and as the State concedes, they were wrong here.

¶ 25    Defense counsel did not object to the trial court's use of the IPI instructions. The error is thus forfeited. But it is reviewable as plain error, as we held on remand in *People v. Jones*, 2025

IL App (1st) 221555-U, ¶¶ 11-13, after *Guy* overruled the appellate court's original decision approving the IPI instructions for attempted first-degree murder (of a peace officer).

¶ 26    To be clear, we cannot fault the trial court (or for that matter, defense counsel) for using longstanding and presumptively correct IPI instructions, in a case presenting no unusual facts, before our supreme court held that they are facially defective for misstating the *mens rea* element of the offense. But with the benefit of *Guy*'s holding, the error is now clear and obvious—and serious enough to warrant review.

¶ 27    Plain-error review of forfeited instructional errors is governed by Illinois Supreme Court Rule 451(c) (eff. April 8, 2013), which provides that "substantial defects are not waived by the failure to make timely objections thereto if the interests of justice require." Our supreme court has long held that "[t]he failure correctly to inform the jury of the elements of the crime charged" is among the clearest examples of a "substantial defect" or "grave" instructional error. *People v. Ogunsola*, 87 Ill. 2d 216, 222 (1981). Indeed, "[i]t is of the essence of a fair trial that 'the jury not be permitted to deliberate a defendant's guilt or innocence of the crime charged without being told the essential characteristics of that crime.' " *Id.* (quoting *People v. Lewis*, 112 Ill. App. 2d 1, 11 (1969)).

¶ 28    In *Ogunsola*, as here, the instructions did not properly state the intent element of the charged offense. *Id.* at 219-20. An error of this kind—unlike, say, omitting a definition of a term or an instruction on a collateral issue—necessarily "deprives the jury of the guidance it must have properly to decide the case." *Id.* at 223. In the formulation our supreme court would later adopt for grave instructional errors, it "creates a serious risk that the jurors incorrectly convicted

the defendant because they did not understand the applicable law, so as to severely threaten the fairness of the trial." *People v. Hopp*, 209 Ill. 2d 1, 13 (2004).

¶ 29    That serious risk is evident here. The defective instructions allowed the jury to convict defendant on a legally improper basis: a sincere but unreasonable belief in the need for defensive force. As noted, that finding demands an acquittal on a charge of attempted murder.

¶ 30    The State would have us deem the error harmless, on the ground that the evidence disproved defendant's alleged subjective belief. It bears emphasis that the trial court found sufficient evidence to instruct the jury on defendant's affirmative defense, and one element of that defense, of course, was a subjective belief in the need for defensive force. *People v. Vesey*, 2026 IL 130919, ¶ 42; *People v. Jeffries*, 164 Ill. 2d 104, 128 (1995). Thus, the trial court necessarily (if implicitly) found that there was a genuine question of fact, for the jury to resolve, on the issue of defendant's subjective belief. We think the appropriate course of action is to abide by the trial court's determination, allow the parties to present their cases in light of *Guy*'s interpretation of the *mens rea* element, and submit the issue of defendant's subjective belief to a properly instructed jury. See *Jones*, 2025 IL App (1st) 221555-U, ¶ 14.

¶ 31    We would not go further, as defendant asks, and reverse his attempted-murder conviction outright. The supreme court granted that remedy in *Guy*, 2025 IL 129967, ¶¶ 72-75, but for reasons that do not apply here. The defendant in *Guy* was charged with the first-degree murder of one victim, David, and the attempted first-degree murder of a second victim, Sheena. *Id.* ¶ 5. As to David, the jury convicted the defendant of second-degree murder, based on imperfect self-defense. *Id.* ¶ 16. And the State conceded on appeal that the gunshots, all part of a single barrage,

were all fired with the same intent. *Id.* ¶ 63. Thus, the jury's finding of second-degree murder (of David) precluded a finding of attempted first-degree murder (of Sheena), as *Guy* construed the latter offense. *Id.* ¶ 73. In the interests of justice, the supreme court reversed the attempted murder conviction and entered a conviction on the lesser-included offense of aggravated battery. *Id.* ¶ 75.

¶ 32    It was evident from the verdicts in *Guy* that the jury credited the defendant with acting on a sincere (but unreasonable) belief in self-defense. There is no way for us to know whether the jury made a similar finding here. A new trial is warranted, but an outright reversal is not.

¶ 33    Absent an unusual circumstance like the inconsistent verdicts in *Guy*, double jeopardy generally does not bar a retrial when a "post-trial change in the law," such as a new judicial interpretation of the elements of an offense, "has altered the elements of proof" and led to the reversal of a conviction. *People v. Casler*, 2020 IL 125117, ¶ 57 (quoting *Osborne v. District of Columbia*, 169 A.3d 876, 887 n.12 (D.C. 2017)). And in any event, the State presented sufficient evidence that defendant did not act on a sincere belief in the need for defensive force when he shot Partee. Double jeopardy does not bar a retrial.

¶ 34                                  CONCLUSION

¶ 35    We reverse the judgment of the circuit court and remand for a new trial.

¶ 36    Reversed and remanded.